**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD/SRN) |
| This Document Relates to: | : | |
| *Michael Black, et al. v. Bayer Corp., et al.* | : | Case No. 02-0199 |

**BAYER AND GSK'S RESPONSE TO MOTION FOR REMAND AND CROSS-MOTION TO DENY CLASS CERTIFICATION AND ENTER JUDGMENT AGAINST PLAINTIFF**

Plaintiff George McCollins'[1] motion to remand is premature. No case should be recommended for transfer until, among other things, this Court has entered its *Daubert* rulings, which will apply to all plaintiffs in this MDL. However, defendants have no objection to the alternate relief requested by Mr. McCollins: prompt consideration by this Court of his class allegations. Accordingly, defendants move for denial of class certification. *See In re Old Kent Mortgage Co. Yield Spread Premium Litig.*, 191 F.R.D. 155, 162 (D. Minn. 2000) (recognizing that "[a]ny party may move for a class determination under Rule 23(c)(1)") (citing Wright & Miller)).

Plaintiffs are not entitled to serial relitigation of class certification issues. *See* PTO 4 § IV.E (requiring plaintiffs to file any motion and supporting brief seeking class certification in 2002). This Court ruled, in denying certification of the master class action complaint, that economic loss claims like the ones asserted by Mr. McCollins,

[1] This case originally involved three plaintiffs. The amended complaints filed in 2001 and 2003 omitted plaintiff Peggy Ann Mays. Plaintiff Michael Black was dismissed with prejudice by this Court on January 14, 2005.

cannot be litigated on a classwide basis because individual issues of fact predominate – a holding that applies equally to statewide and nationwide classes. *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 213-14 (D. Minn. 2003). The evidentiary record in this case confirms the correctness of that ruling.

Moreover, judgment should be entered against Mr. McCollins individually. Mr. McCollins has asserted claims for economic loss based on his use of Baycol. However, his testimony and that of his physician demonstrate that Mr. McCollins did not sustain an economic loss related to his use of Baycol because Mr. McCollins benefited from and was not injured by Baycol. Specifically, his physician testified that:

- Baycol was "safe and effective in Mr. McCollins," Dep. of W. Michael Skeens (Ex. A) at 86:8-13;
- Mr. McCollins' use of Baycol was not associated with any side effects, *see id.* at 78:12-79:2; and
- Baycol "was perfect for [Mr. McCollins]," *id.* at 77:18.

Thus, there is no reason this case should be returned to the district in which it was filed. Rather, this Court should enforce its master class certification ruling by denying certification of the putative class and should enter judgment against plaintiff McCollins.

## STATEMENT OF FACTS AND OF THIS CASE

### A. Mr. McCollins' Successful Use of Baycol

Mr. McCollins was first diagnosed with high cholesterol in December 1992. *See* Skeens Dep. (Ex. A) at 12:13-21; McCollins Medical Records (Ex. B) MS000207gfm.; *see also* Dep. of George McCollins (Ex. C) at 57:15-58:3, 134:22-135:4,

155:4-7 (describing plaintiff's history of high blood pressure which pre- and postdates his Baycol use). Efforts to treat his high cholesterol through lifestyle changes did not work. *See* Skeens Dep. (Ex. A) at 76:12-78:22; McCollins Medical Records (Ex. B) MS000149-152gfm. Accordingly, Mr. McCollins was prescribed the 20 mg. dose of Pravachol (another statin) in August of 1993. Skeens Dep. (Ex. A) at 79:3-6, 80:6-21, 81:5-18; McCollins Medical Records (Ex. B) MS000147-148gfm. Plaintiff's physician, W. Michael Skeens, M.D., told plaintiff to notify him if he had any muscle pain on the drug. Skeens Dep. (Ex. A) at 82:2-11, 86:20-87:3.

In November of 1994, Mr. McCollins went to the emergency room complaining of leg pain and saw Dr. Skeens for follow-up care several days later. *See id* at 88:7-21; McCollins Medical Records (Ex. B) SMH000031gfm, MS000117-18gfm. Mr. McCollins had "stopped taking his Pravachol because of the fact that this can cause myositis and he was aware of this." Skeens Dep. (Ex. A) at 88:22-89:19; *see id.* at 29:7-33:8, 49:23-51:12 (discussing removal from Pravachol); McCollins Dep. (Ex. C) at 89:16-90:17 (same).

Around October 1995, Mr. McCollins was prescribed Zocor. *Id.* at 92:16-93:16; McCollins Medical Records (Ex. B) MS000103gfm. While taking Zocor, Plaintiff reported mild edema and thigh cramping. *See* McCollins Medical Records (Ex. B) MS000091-93gfm, MS000078-79gfm.

In April 2001, Dr. Skeens switched Mr. McCollins from Zocor to the 0.4 mg. dose of Baycol because Mr. McCollins' insurance no longer covered Zocor. *See* McCollins Dep. (Ex. C) at 100:5-101:21, 159:20-160:6; McCollins Medical Records

(Ex. B) MS0000029-31gfm. Dr. Skeens testified that his decision to prescribe Baycol was based on his professional medical judgment and with awareness of the drug's potential side effects. Skeens Dep. (Ex. A) at 34:5-14, 37:12-23, 38:3-9, 75:1-3.

During the time Mr. McCollins took Baycol, his cholesterol and LDL levels remained within the normal range. *See id.* at 78:17-79:20; McCollins Medical Records (Ex. B) CHH000015gfm, MS000163gfm. Dr. Skeens testified, to a reasonable degree of medical certainty, that ***Baycol was "safe and effective in Mr. McCollins.***" Skeens Dep. (Ex. A) at 86:8-13 (emphasis added). At no time were any side effects associated with Baycol identified in Mr. McCollins. *See id.* at 78:12-79:2. Dr. Skeens concluded that the drug "was perfect for [Mr. McCollins]." *Id.* at 77:18.

Mr. McCollins complains that he experienced leg cramps and abdominal pain while taking Baycol. McCollins Dep. (Ex. C) at 70:13-22, 149:12-19. However, no medical testimony links these ailments to Mr. McCollins' use of Baycol. To the contrary, the medical records and testimony of Mr. McCollins' own physician establishes that certain ailments Mr. McCollins suffered while taking Baycol were caused by prostatitis and medication Mr. McCollins was taking for prostatitis.[2] Further, Mr. McCollins

---

[2] Specifically, on or about July 19, 2001, Dr. Skeens observed that Mr. McCollins had low back pain. Skeens Dep. (Ex. A) 79:16-18. A week later, Dr. Skeens saw Mr. McCollins again, finding that the pain radiated around to plaintiff's left testicle; in the interim, Mr. McCollins had been diagnosed with prostatitis. *Id.* at 79:19-80:14 (testifying none of the problems suggested that Baycol was involved in any way); *see also* McCollins Dep. (Ex. C) at 64:14-65:15 (prostate problems began decades before and were continuing); McCollins Medical Records (Ex. B) TCS000015gfm (July 16, 2001, medical record regarding prostate complaints and detailing that secretions contained bacteria and other abnormalities). On July 25, 2001, plaintiff complained of abdominal

*(continued on next page)*

conceded that he had sought treatment for leg cramps before he ever took Baycol. McCollins Dep. (Ex. C) at 180:11-22.

On August 9, 2001, Dr. Skeens called Mr. McCollins to switch him to Lipitor for the sole reason that Baycol had been withdrawn from the market. Skeens Dep. (Ex. A) at 80:7-14, 82:4-8, 84:9-13; McCollins Medical Records (Ex. B) MS000019gfm.

**B. This Lawsuit**

After seeing a newspaper advertisement for a lawyer pursuing Baycol-related claims, Mr. McCollins decided to file a lawsuit. McCollins Dep. (Ex. C) at 31:9-33:4. Mr. McCollins brings this action individually and on behalf of a putative class of plaintiffs who "purchased Baycol as a cholesterol lowering product in West Virginia." Compl. ¶ 1.

Although the governing Second Amended Class Action Complaint repeatedly alleges that Baycol caused users to suffer dangerous side effects, *see, e.g.*, *id.* ¶¶ 16-17, 19-31, 36(b), 51, 59, it disavows any recovery for personal injury, *id.* ¶ 34. Rather, the complaint seek damages for "economic loss" under a variety of state law theories. *See id.* ¶¶ 41-67 (breaches of warranty, unjust enrichment, deceptive trade

---

pain; a CT showed the abdomen to be normal, but showed obstruction of the prostate. *See* McCollins Medical Records (Ex. B) CHH000018gfm, MS000212gfm. Furthermore, on August 6, 2001, Mr. McCollins' physician determined that a prostatitis medication, Levaquin, was making Mr. McCollins "very sick" to his stomach, and removed him from the drug. *See* McCollins Medical Records (Ex. B) MS000020gfm.

practices); *id*. at 17 (seeking, *inter alia*, general, compensatory, consequential, punitive and exemplary damages, as well as attorneys' fees and refund of all purchase costs).

Mr. McCollins spent less than 35 dollars as his copayment to fill his Baycol prescription four times. McCollins Dep. (Ex. C), at 26:16-18, 28:4-11, 145:15-146:21; McCollins Medical Record (Ex. B) GFM000043gfm.

**ARGUMENT**

**I. PLAINTIFF'S MOTION TO REMAND IS PREMATURE.**

This case should not be remanded to the transferor court – now or ever. The case should not be remanded now because pretrial proceedings before this Court are not complete. *See* 28 U.S.C. § 1407(a); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 33 (1998). Specifically, the Court has not yet ruled on generic *Daubert* motions – a prerequisite for remand under PTO 149 § VI. Mr. McCollins cannot avoid this fact by suggesting, as he does, that this case be stayed after remand until this Court's *Daubert* orders have been entered. Pl.'s Mot. ¶ 9. If the case were remanded, this Court would lose jurisdiction to enter orders binding the case.

Moreover, the Court has not entered an order addressing defendants' motion to strike the testimony of plaintiff's putative case-specific expert, Dr. Gregory C. Clarke. *See* Case No. 02-0199, Document 47 at 4-5 (filed Sept. 26, 2006) (brief in support of motion). Defendants argued that Dr. Clarke offered no case-specific testimony and was actually a generic expert tendered out-of-time, in violation of PTO 120 ¶ 9. Mr. McCollins has conceded that motion by not contesting it.

However, even if the Court had entered orders on all of these motions, this case should not be remanded. The fairest and most efficient way to manage this litigation is for this Court to apply its own ruling on class certification issues. Further, the Court should not be remanding cases, such as this one, that can be decided through simple motion practice. This Court already knows the issues in this litigation and can address summary judgment motions expeditiously. Where, as here, plaintiff cannot establish a triable issue of material fact, court staffs should not be required to prepare and transfer files and transferor judges should not be required to invest significant time learning litigation that will not survive summary judgment.

## II. CLASS CERTIFICATION SHOULD BE DENIED.

This Court already has ruled, in denying certification of the master class action complaint, that economic loss claims cannot be litigated on a classwide basis. *In re Baycol Prods. Litig.*, 218 F.R.D. at 213-14. The fact that plaintiff here purports to represent a statewide class makes no difference because this Court held, among other things, that individual issues of fact (as well as differences in state law) bar certification. *Id.* at 214 ("Individual issues predominate, rendering class certification unwarranted"). Indeed, the evidence in this action confirms that this Court was correct in denying certification of economic loss claims.

### A. Plaintiff's Class Allegations Should Be Stricken as a Matter of Law.

Plaintiff's class claims cannot go forward as a matter of law and should therefore be stricken. *See In re Old Kent Mortgage Co. Yield Spread Premium Litig.*, 191 F.R.D. 155, 162-64 (D. Minn. 2000) (granting motion to strike class allegations). *See*

*also Thompson v. Merck & Co.*, Nos. C.A. 01-1004 *et al*. 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (granting motion to strike before plaintiff had moved for certification because it was "clear" from the complaints and evidence that plaintiff could not satisfy Rule 23 and "[n]o amount of additional class discovery will alter this conclusion"); S*tubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) (recognizing that under Rule 23 a motion to strike can be used to "test the viability of a class at the earliest pleading stage of the litigation") (collecting cases). *See generally General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982) ("[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named Plaintiff's claim").

This Court already has ruled that economic loss claims cannot be litigated on a classwide basis because individual issues of fact predominate. *See In re Baycol*, 218 F.R.D. at 213-14. Specifically, the Court recognized that the viability of such a claim depends on "whether a patient received their money's worth from Baycol," and to prevail "[p]laintiffs would have to demonstrate that they were either injured by Baycol, or that Baycol did not provide them any health benefits." *Id.*; *see id.* at 213 (recognizing "one would have to know whether or not [plaintiffs] suffered any injury") (internal quotation omitted). As this Court has recognized, these showings are individualized, multi-faceted, and predominant, "rendering class certification unwarranted." *Id.* at 214. *See also In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 68-69 (S.D.N.Y. 2002) (denying class certification as to economic injury class given the predominance of individual issues).

Plaintiff cannot avoid this holding by asserting that his economic loss claims (breach of express and implied warranty, unjust enrichment, and violation of West Virginia consumer protection law, W. Va. Code § 46A-6-101 *et seq.*) arise under West Virginia law. To recover under any of these theories, plaintiffs must show an actual injury proximately caused by the defendant – the precise requirement that this Court found to be highly individualized and a bar to class certification. *See City Nat'l Bank of Charleston v. Wells*, 384 S.E.2d 374, 382 (W. Va. 1989) (requiring proximately caused injury for breach of warranty); *Bertovich v. Advanced Brands & Importing, Co.*, No. 5:05CV74, 2006 WL 2382273, at *4-5 (N.D.W. Va. Aug. 17, 2006) (recognizing plaintiff's consumer protection act, unjust enrichment, negligence and other West Virginia claims all required proof of "an actual injury to a legally protected interest"); W. Va. Code § 46A-6-106 (requiring ascertainable loss of money or property resulting from prohibited or unlawful practice). Accordingly, without even turning to the evidence of this case, it is clear that this lawsuit cannot go forward as a class action.

**B. The Evidence Confirms that Individual Issues of Fact Predominate.**

The testimony of Mr. McCollins and his doctor, and Mr. McCollins' medical records further support the conclusion that class certification must be denied. That evidence demonstrates the predominance of individual facts as to whether Baycol benefited and/or allegedly harmed any particular individual.

***1. Efficacy.*** To determine whether Baycol worked for any individual, it is necessary to consider that particular plaintiff's medical history. *See*, *e.g.*, Skeens Dep.

(Ex. A) at 20:5-7 (testifying that "every patient has to be evaluated on an individualized basis" to determine whether statin therapy is appropriate).

Mr. McCollins was diagnosed with high cholesterol in December 1992 (total 288, LDL 198). *See id.* at 12:13-21, 13:11-14:17. During the time Mr. McCollins took Baycol, his cholesterol, HDL and LDL levels remained within normal range. *See id.* at 76:10-79:20; McCollins Medical Records (Ex. B) CHH000015gfm, MS000163gfm. After approximately one month on Baycol, Mr. McCollins' LDL was 112, "one of the better LDLs that he had [while being treated for high cholesterol]." Skeens Dep. (Ex. A) at 76:12-23. Thus, for Mr. McCollins, "Baycol helped." *Id.* at 77:19-20. Indeed, Dr. Skeens testified, to a reasonable degree of medical certainty, that Baycol not only was "safe and effective in Mr. McCollins," but "*was perfect for [him]*." *Id.* at 86:8-13,77:18 (emphasis added).[3]

Mr. McCollins does not dispute that Baycol worked for him. *See* McCollins Dep. (Ex. C) at 111:11-113:6 (testifying he had "no idea" as a layperson whether Baycol worked for him, and deferring to the medical records regarding his cholesterol); *id.* at 158:16-159:1 (deferring to a physician on whether Baycol was a "good

[3] Even if a patient's response to Baycol had not been as dramatic as in Mr. McCollins' case, it would be necessary to examine an individual's medical history to determine whether Baycol was helpful in light of that history. Even if the medicine had not brought cholesterol within target ranges, it might be effective in a patient with a history of high cholesterol that was not responsive to other medicines or, as here, a history of adverse reactions to other statins. *E.g.*, McCollins Dep. (Ex. C) at 89:16-90:17 (ceased use of another statin when leg pain occurred because he "thought maybe [Pravachol] was causing my problem").

drug"). Mr. McCollins' history demonstrates that determinations as to whether Baycol helped a particular individual can only be made on a case-by-case basis.

**2. *Alleged injury.*** Any inquiry into whether Baycol caused physical injury in a particular plaintiff also is individualized and, as Mr. McCollins' case demonstrates, requires examination of the individual's pre-existing conditions, prior statin reactions, the individual plaintiff's and learned intermediary's knowledge of potential side effects associated with statins, the warnings the intermediary provided about such side effects, and what the patient's medical records reflect about his or her reactions to Baycol.

For example, whereas Mr. McCollins asserts that he experienced leg cramps and abdominal pain while taking Baycol, *see* McCollins Dep. (Ex. C) at 70:13-22, 149:12-19, he testified that, prior to taking Baycol, he had "suffered from leg cramps" and "had actually sought medical treatment for leg cramps," *id.* at 180:11-182:11; *see* McCollins Medical Records (Ex. B) MS000117-118gfm (reporting leg pain while on Pravachol), MS000078-79gfm (thigh cramping while on Zocor). Similarly, Mr. McCollins had prostatitis that triggered aching and discomfort, and his various prostate conditions and their symptoms preceded his Baycol use by decades. *See, e.g.*, McCollins Dep. (Ex. C) at 64:14-65:15; McCollins Medical Records (Ex. B) MS000021-22gfm. Furthermore, Mr. McCollins had pre-existing degenerative joint disease and lumbar disc disease that caused him back pain before he had ever taken Baycol. *See* McCollins Dep. (Ex. C) at 65:16-19; Skeens Dep. (Ex. A) at 79:3-11; McCollins Medical Records (Ex. B) MS000029-31gfm (detailing pre-existing conditions when Baycol was prescribed).

Against this background, Dr. Skeens diagnosed plaintiff with no Baycol-related side effects. *See* Skeens Dep. (Ex. A) at 78:12-79:2 (testifying "no side effect problems were identified"); *id.* at 88:21-89:1 (concluding "Baycol did not cause Mr. McCollins any harm in terms of muscle aches"); *cf.* Exhibit B to Defendants' Motion to Strike Dr. Clarke (putative expert testimony that he could not determine whether McCollins "suffered physical injuries related to this patient's ingestion of Baycol"). Rather, as noted, the medication was "safe and effective in Mr. McCollins." Skeens Dep. (Ex. A) at 86:8-13.[4] This history illustrates some of the individual factual inquiries required to determine whether Baycol benefited or purportedly injured each putative class member.

**C. Mr. McCollins Is Not An Adequate Class Representative.**

Defendants do not intend to review all of the arguments in opposition to certification of the putative class, because this Court's prior holding and the evidence that individual issues predominate are each independent and adequate grounds for denying class certification. (Defendants incorporate their prior class certification arguments by reference.) But it should be noted briefly that Mr. Collins could not adequately represent the putative class.

---

[4] Furthermore, Dr. Skeens prescribed Baycol with awareness of the potential risk of side effects, including muscle pain, associated with the drug. *See* Skeens Dep. (Ex. A) at 72:15-73:20; *id.* at 73:21-74:1 (testifying he apprised plaintiff about such warnings). Mr. McCollins admitted that he knew muscle pains were a potential side effects of Baycol use, *see* McCollins Dep. (Ex. C) at 103:21-104:2; *see also id.* 86:20-87:3, 90:11-17, 93:17-23, and unlike during his previous statin therapy, he neither reported such pains to his physician nor did he decide to stop taking Baycol because of pain.

Here, conflicts of interest exist between Mr. McCollins and the unnamed members of the putative class at nearly every turn. *See generally Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (adequacy requirement "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent"); *see also In re General Am. Life Ins. Sales Practices Litig.*, 357 F.3d 800, 805 (8th Cir. 2004).

For instance, Mr. McCollins limits his economic claims to recovery of the amounts of his co-payments for Baycol, but the complaint focuses on alleged personal injuries to class members and ostensibly seeks damages for various economic losses as outgrowth of those purported injuries, including more extensive compensatory and punitive damages. *See, e.g.*, Compl. ¶ 36(h); *id.* ¶ 51 (alleging "grav[e] har[m]"); *id.* at 17 (seeking general, compensatory, consequential, punitive and exemplary damages, as well as the "[f]ull refund of all purchase costs" requested by Mr. McCollins); *compare* McCollins Dep. (Ex. C) at 46:20-47:4 (disclaiming any out-of-pocket expense incurred of the type where an individual "ha[s] to go to the doctor to ask the doctor, 'What is going on, has this [Baycol] caused me any injury?'"). Mr. McCollins cannot adequately represent purported absent class members who allegedly sustained consequential economic injuries that he did not incur.

Similar tensions are present given that Mr. McCollins lacks incentive, much less standing, to pursue claims of deceptive practices and misrepresentations, *see, e.g.*, Compl. ¶¶ 55-58, 61, as neither he nor his physician relied on any representations by defendants in deciding to purchase or prescribe Baycol. *See, e.g.*, McCollins Dep. (Ex. C) at 100:5-101:21, 159:20-160:6, 104:19-105:2; *accord* Skeens Dep. (Ex. A) at

75:1-18, 34:18-36:14. Because Mr. McCollins' interests in pursuing his claims for limited relief conflict with the interests of the unnamed class members, he is an inadequate representative.[5]

For all these reasons, as well as those considered in this Court's original denial of class certification, class certification should be denied.

## III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INDIVIDUAL CLAIMS.

After plaintiff's class allegations are stricken, defendants should be granted summary judgment on Mr. McCollins' individual claims. *See* Fed. R. Civ. P. 56. This motion focuses upon one issue: Mr. McCollins has no cognizable evidence he sustained an economic injury caused by defendants. As set forth in Part II.A, West Virginia law requires proof that defendants caused plaintiff to suffer an actual financial injury caused by an alleged defect in the product or by defendants' alleged misrepresentations. *See supra*, at 9. The record contains no evidence that would allow Mr. McCollins to make such a showing.

---

[5] Moreover, by limiting this lawsuit to economic loss claims, Mr. McCollins could extinguish injury claims of absent class members. *See Foster v. St. Jude Med., Inc.*, 229 F.R.D. 599, 604 (D. Minn. 2005) (class representatives inadequate where they pursued a different type of damages relief than the absent class members); *In re Universal Service Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 668-69 (D. Kan. 2004) (inadequacy occurs when representative opts "to pursue certain claims on a class-wide basis while jeopardizing the class members' ability to subsequently pursue other claims"); *In re Methyl Tertiary Butyl Tether Prods. Liab. Litig.*, 209 F.R.D. 323, 338-340 (S.D.N.Y. 2002) (finding representative's disavowal of personal injury claims showed that his interest was not sufficiently substantial to adequately represent class members who did sustain personal injury).

First, where a purported defect is at issue, to recover for economic injury a plaintiff must show more than that the product "suffer[s] from defects"; rather, the purported "defect must manifest itself" in *plaintiff's* product. *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999) (holding "[w]here, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies"); *Baycol*, 218 F.R.D. at 213-14 (rejecting plaintiffs' arguments that economic harm did not require showing of Baycol-related injury or lack of health benefit); *cf. Aikens v. Debow*, 541 S.E.2d 576, 583-87, 589-91 (W. Va. 2000) (warning about the dangers of allowing pure "economic loss" claims to proceed in tort without a showing of damage to person or property).

The record contains no medical evidence that Mr. McCollins was injured by Baycol. To the contrary, his physician testified that Baycol worked well for Mr. McCollins and caused no injury. *See supra*, at 10-11; *accord* Skeens Dep. (Ex. A) at 77:18 (concluding "*[Baycol] was perfect for [Mr. McCollins]*") (emphasis added). Because Mr. McCollins did not sustain any personal injury as a result of his Baycol use, but instead received health benefits, he cannot show economic damage caused by Baycol. *See City Nat'l Bank of Charleston*, 384 S.E.2d at 382; *Bertovich*, No. 5:05CV74, 2006 WL 2382273, at *4-5 (N.D.W. Va.); W. Va. Code § 46A-6-106. Quite simply, "plaintiff has received the benefit of his bargain and has *no basis to recover purchase costs*." *Williams v. Purdue Pharma. Co.*, 297 F. Supp. 2d 171, 176 (D.D.C. 2003). *See*

*Prudential Ins. Co. of Am. v. Couch*, 376 S.E.2d 104, 108 (W. Va. 1988) (basis for unjust enrichment claim is that defendant has retained money on which it has no valid claim).[6]

Second, plaintiff cannot proceed to trial on the theory that he suffered economic damage because defendants' purportedly misleading representations caused him to buy a product that he would not have purchased. *See, e.g.*, *id.*; *United States v. Massenburg*, No. Civ.A.2:03-0437, 2004 WL 2370694, at *6 (S.D.W. Va. Oct. 21, 2004) (claim failed where plaintiff could not prove that monies received by defendant were the result of a fraudulent scheme). *See also Pinnacle Comm. Int'l, Inc. v. Am. Family Mortgage Corp.*, 417 F. Supp. 2d 1073, 1088 (D. Minn. 2006) (granting summary judgment where plaintiff admittedly did not rely on alleged misrepresentation); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (plaintiff's claims fail where plaintiff cannot show he or she "saw, read, or in any way relied on the advertisements"); *Williams*, 297 F. Supp. 2d at 177.

Mr. McCollins acknowledges that he did not rely on any representations by defendants in deciding to purchase Baycol. *E.g.*, McCollins Dep. (Ex. C) at 100:5-101:21 (switched to Baycol because Zocor was removed from insurance formulary);

---

[6] Indeed, the Fifth Circuit has concluded that a plaintiff asserting such a claim does not even have standing:

> [Plaintiff's] claim to injury runs something like this: [Defendants] sold [Baycol]; [Plaintiff] purchased and used [Baycol]; [Defendants] did not list enough warnings on [Baycol], and/or [Baycol] was defective; other patients were injured by [Baycol]; [Plaintiff] would like [his] money back.

*Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002). The Fifth Circuit held, such an assertion of a "loss of cash . . . cannot constitute an injury in fact." *Id.* at 319-20.

159:20-160:6.[7] Rather, he relied upon Dr. Skeens' medical judgment in taking Baycol. McCollins Dep. (Ex. C) at 104:19-105:2; *accord* Skeens Dep. (Ex. A) at 75:1-3. And Dr. Skeens testified that, in his medical judgment, Baycol had performed so well for plaintiff that there was no medical reason Mr. McCollins could not have continued taking Baycol when it was withdrawn from the market. Skeens Dep. (Ex. A) at 82:4-8. Thus, because any purported misrepresentations are unrelated to plaintiff's purported economic damages, he cannot present a triable issue of material fact.

Third, Mr. McCollins cannot show a triable issue on economic loss because Baycol was not only safe and effective for him, it gave him an economic benefit versus competing products. *See*, *e.g.*, McCollins Medical Records (Ex. B) GFM000043gfm (Baycol co-pay of $8.67); *id.* (Lipitor co-pays ranging from $8.41 to $18.98); CVSP000010gfm (Zocor co-pay of $20.06). Indeed, when Dr. Skeens switched Mr. McCollins from Baycol to Lipitor, Mr. McCollins' co-payments increased. *See* McCollins Medical Records (Ex. B) GFM000043gfm; McCollins Dep. (Ex. C) at 151:10-152:19 (discussing $18.01 co-payment). Accordingly, any claim that the value of the

---

7 Plaintiff's express warranty claim is independently barred because Mr. McCollins does not point to a single affirmation of fact or promise made by defendants which formed the "basis of the bargain." W. Va. Code § 46A-6-101; *see Roxalana Hills, Ltd. v. Masonite Corp.*, 627 F. Supp. 1194, 1200-01 (S.D. W. Va. 1986) (holding no statements made by defendant formed the basis of the bargain). At most, Mr. McCollins asserts that Bayer generically warranted that "Baycol was safe and well tolerated by patients studied," Compl. ¶ 32, yet this Court has already recognized that it is indisputable that Baycol "does lower cholesterol, does reduce inflammation, and . . . was a useful drug for reducing cardiovascular risk." *In re Baycol*, 218 F.R.D. at 213; *compare id. with* Compl. ¶ 48 (implied warranty claim asserting that Baycol was unreasonably dangerous and unfit for ordinary use).

drug was less than its purchase price is specious given that plaintiff had experienced muscle aches and pains while taking other statins, had no health issue related to Baycol, and the competing statins would have been more expensive than Baycol. *Cf. Rezulin*, 210 F.R.D. at 68 (discussing restitution in form of purchase price).

In sum, because Mr. McCollins cannot show he sustained an economic injury caused by his use of Baycol, summary judgment should be entered for defendants.

**CONCLUSION**

For these reasons, Bayer and GSK respectfully request that the Court (1) deny remand; (2) deny class certification; and (3) enter summary judgment in favor of defendants and against Mr. McCollins on his individual causes of action.

Dated: January 10, 2007
Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
Eugene A. Schoon
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, MN 55402
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corp. d/b/a GlaxoSmithKline*

Frank R. Volpe
Eamon P. Joyce
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Richard K. Dandrea
ECKERT SEAMENS CHERIN
& MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Erik W. Legg
FARRELL FARRELL & FARRELL, PLLC
914 Fifth Avenue
Huntington, WV 25701
(304) 522-9100

*Counsel for Bayer Corporation and Bayer AG*