**UNITED STATES DISCTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **In re BAYCOL PRODUCTS LITIGATION** | : | **MDL No. 1431 (MJD/SRN)** |
| **This Document Relates to:** | : | |
| ***McCollins v. Bayer Corp., et al.*** | : | **Case No. 02-0199** |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND AND OPPOSITION TO BAYER AND GSK'S CROSS-MOTION TO DENY CLASS CERTIFICATION AND ENTER JUDGMENT AGAINST PLAINTIFF**

## INTRODUCTION[1]

In response to Plaintiff George F. McCollins' motion to remand this case to the West Virginia transferor court, not only did Defendants oppose this motion, but they also cross-moved to strike Plaintiff's class allegations and to enter summary judgment. As discussed in detail below, remand is appropriate here. Even if the Court declines to remand now, however, Defendants' cross-motions to strike and for summary judgment should be denied. Plaintiff is an adequate class representative and common issues related to Defendants' liability outweigh any individual issues related to damages. Further, summary judgment is inappropriate as there are disputed questions pertaining to whether Baycol was different from or inferior to the product for which Mr. McCollins bargained.

## ARGUMENT

### I. PLAINTIFF'S MOTION TO REMAND SHOULD BE GRANTED

This case should be remanded to the transferor court because nearly all of the prerequisites for remand under PTO 149 §VI are satisfied. Plaintiff's fact sheet has been

---

1. Plaintiff's counsel had previously granted counsel for Defendants several extensions to respond to the motion to remand. In exchange, counsel for Defendants gave Plaintiff's counsel an open-ended extension to file this reply brief.

completed, Plaintiff has executed all of the authorizations provided by Defendants, and case-specific fact and expert discovery have been completed.

Under the governing statute, "it is not contemplated that a Section 1407 transferee judge will necessarily complete all pretrial proceedings in all actions transferred and assigned to him." *In re Evergreen Valley Project Litigation*, 435 F. Supp. 923, 924 (J.P.M.L. 1977). Defendants argue that remand is inappropriate because a few pretrial proceedings before this Court have not been completed. *See* Bayer and GSK's Resp. to Mot. for Remand and Cross-Mot. to Deny Class Cert. and Enter Judgment Against Pltf. ("Def.'s Mot.") at 6. The fact that the Court has not yet ruled on the *Daubert* motions and the motion to strike the testimony of Plaintiff's case-specific expert, however, should not delay remand. The motion to strike Plaintiff's case-specific expert is unique to this particular action and its resolution will not touch on any issues that are common to the remaining MDL actions pending before this Court. As such, this issue should be decided by the *transferor* court.

Moreover, remand is appropriate in this case because the issues raised in the remaining motions are not highly specialized. Since their resolution does not require "any particular expertise . . . gained from supervising this litigation," they "can just as easily be presented to the transferor court." *In re Multidistrict Civil Actions Involving Air Crash Disaster Near Dayton*, 386 F. Supp. 908, 909 (J.P.M.L. 1975). In addition to the fact that the remaining issues are ones that can be easily litigated in the transferor court, remand in this case is not in any way inefficient. The transferor court is familiar with the claims made and the damages sought in this action. In fact, the transferor court is experienced in adjudicating class actions that are similar in nature to this case. The legal

and factual issues in this case are not going to be new to the transferor court. In the past five years alone, the transferor court had five hundred twenty six product liability and/or personal injury cases on its docket.[2] Therefore, there is no risk that the transferor court would need a significant amount of time to learn the facts and theories of this case. *See In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.*, MDL No. 897, MISC. 21-61, 92 Civ. 4555, 1995 WL 234975, at *4 (S.D.N.Y. Apr. 21, 1995) (denying a motion to remand in a case the presented a complex set of factual and legal questions because remand would force another court to make its way up a learning curve).

Here, there is no danger that the transferor court would duplicate efforts in order to learn the issues and theories in this case. Therefore, Defendants' argument that the transferor court may need to "invest significant time learning" the issues in this litigation has no basis. Def.s' Mot. at 7. As such, Plaintiff's motion should be granted.

## II. CLASS CERTIFICATION IS APPROPRIATE

Assuming *arguendo* that the Court declines to remand this case, Defendants' cross-motion to deny class certification should be summarily denied. Defendants' cross-motion relies almost exclusively on the Court's prior ruling denying certification of a nationwide personal injury, medical monitoring, punitive damages and refund class; however, this case is inapposite to the previously denied national class action and, instead, is appropriate for class treatment. Importantly, the instant case is easily amenable to certification because any individualized issues of fact and law that led the Court to previously deny certification are no longer present in this limited action.

2. According to a search conducted on PACER on April 25, 2007, the United States District Court for the Southern District of West Virginia had 526 product liability and/or personal injury cases on its docket.

Additionally, the Defendants' motion relies on disputed contentions about the merits of Plaintiff's claims, rather than the procedural requirements of certification. These arguments are misplaced. Because of the flexibility of Rule 23, examination of the merits of a case on a motion for certification is inappropriate. *See, e.g., Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974) ("[N]othing in either the language or history of *Rule 23* . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"); *Egge v. Healthspan Services Co.*, 208 F.R.D. 265, 267 (D.Minn. 2002) (same). Rather, when examining the appropriate elements for consideration under Rule 23, certification here is appropriate.

In particular, the West Virginia Supreme Court has examined the propriety of class action claims against drug companies in *In re West Virginia Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003). In *In re Rezulin*, the plaintiffs brought claims for refunds under the West Virginia Consumer Credit and Protection Act ("WVCCPA") (the same claims sought here) as well as for medical monitoring relief. The Court found that the plaintiffs' refund claims were appropriate for class certification, laying out a test for ascertainable loss that is easily met in this case. *Id.* at 75. Under this persuasive precedent from the highest court in West Virginia, class certification should be granted.[3]

The Supreme Court has repeatedly recognized that one of the fundamental purposes of Rule 23 is to enable aggrieved persons whose individual claims are dwarfed

3. Plaintiff contends, however, that class certification is more appropriately resolved in the transferor court. Should this Court deny Plaintiff's motion to remand and reach the issue of class certification, Plaintiff is amenable to filing a motion for class certification outlining the arguments made in opposition to Defendants' motion and presenting more evidence in support of class certification.

by the costs of litigation to seek judicial redress through the aggregation of claims into a single class action:

> Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980). In a later decision, the Supreme Court also recognized the efficiency benefit of class actions:

> [t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). *See also Eisen*, 417 U.S. at 161 (1974) ("A critical fact in this litigation is that petitioner's individual stake in the damages award he seeks is only $70. No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount. Economic reality dictates that petitioner's suit proceed as a class action or not at all."); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually. For example, this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available.").

Thus, many courts have recognized that the arguments in favor of certification are "compelling" where, as here, each class member's individual stake is too low to justify

the costs of litigation -- a circumstance commonly referred to as a "negative value" suit. *See, e.g., In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir.1995) (a "negative value suit" occurs when the "stakes to each class member were too slight to repay the cost of the suit"); *Hobson v. Lincoln Ins. Agency, Inc.*, No. 99-C-5619, 2001 WL 648958, at *2 (N.D. Ill. June 7, 2001) (a *de minimis* claim is "precisely the type suitable for adjudication as a class action because no individual plaintiff would take on the alleged wrongs with only a single greenback to gain").

The costs of litigating an individual Baycol refund claim against these Defendants to recover economic damages from purchasing these drugs would dwarf the amount of any individual claim by many orders of magnitude. Striking Plaintiff's claims here would thus contravene "[t]he policy at the very core of the class action mechanism." *Amchem*, 521 U.S. at 617.

**A. Plaintiff's Class Claims Are Viable.**

Although Defendants style their cross-motion as seeking to "deny" class certification under Fed.R.Civ.P. 23, the ultimate relief they seek in their memorandum is that clear: "Plaintiff's Class Allegations Should be *Stricken* as a Matter of Law." Def. Mot. at 7 (emphasis added). Defendants' cross-motion to "strike" Plaintiff's class allegations should be denied.

Fed.R.Civ.P. 12(f) provides that "[u]pon motion made by a party before responding to a pleading . . . or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." While the court is afforded broad discretion in ruling on a motion to strike, *see Nationwide Ins. Co. v. Cent. Mo. Elec. Co-op.*, 278 F.3d 742,

748 (8th Cir. 2001), such motions are "viewed with disfavor and are infrequently granted." *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

Likewise, as commentators have made clear:

> Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted.

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2004). In order to succeed on a Rule 12(f) motion, "it must be shown that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." *Id. See also Strate v. Midwest Bankcentre, Inc.*, 2003 U.S. Dist. LEXIS 26277 at * 18 (E.D.Mo. 2003) (A Rule 12(f) movant "bears the burden of demonstrating that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." ). "[E]ven when technically appropriate and well-founded, Rule 12(f) motions are not granted in the absence of a showing of prejudice to the moving party." Wright & Miller, at § 1381.

Thus, on Defendants' cross-motion to strike, the burden is on Defendants to show that class certification is improper and all reasonable inferences are construed in favor of Plaintiff:

> The present question before the Court . . . is not whether the class should be certified, but whether the class allegations in the complaint should be stricken. At this stage, the burden is not on the party seeking class certification[;] rather, as the non-moving party, all

> reasonable inferences must be construed in [Plaintiffs'] favor.

*Bessette v. Avco Financial Services, Inc.*, 279 B.R. 442, 451 (D.R.I. 2002) (citing *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990)). *See also* 2 Herbert Newburg & Alba Conte, Newberg on Class Actions § 7.22 at 7-75 (3d ed.1992) ("[W]here defendants contend that certification is precluded as a matter of law before the filing of the certification motion, defendants bear the burden of demonstrating that on the face of the complaint, class certification is impossible."); *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C.1991) (when defendants contend that class certification is precluded as matter of law, defendants bear burden of demonstrating it will be impossible for plaintiffs to prove facts supporting class certification).

In particular, Defendants base their motion to strike on the grounds that this Court definitively ruled "that economic loss claims cannot be litigated on a classwide basis." Def. Mot. at 7 (citing *In re Baycol Prods. Litig.*, 218 F.R.D. at 213-14). This was not the holding of the Court, nor should the Court's previous decision operate to bar the limited class claims in this case.

Significantly, the Court's primary opposition to certification of the nationwide refund class was concerns about variation in the numerous states' laws that had to be applied. *Id.* at 214. The Court held:

> This Court finds that Plaintiffs have not provided the Court sufficient information for it to conclude that the laws concerning unjust enrichment and breach of warranty are not significantly or materially different. Plaintiffs have thus failed to demonstrate that common issues of law predominate.

*Id.* Plaintiff's claims here are limited to West Virginia residents and West Virginia law. As such, the Court's previous concerns about variance in law have no applicability here. Similarly, the Court's prior decision cannot operate to bar Plaintiff's more narrow, state-only class.

The Seventh Circuit Court of Appeals was presented a similar situation in *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 333 F.3d 763 (7th Cir. 2003). In *Firestone,* owners of sport utility vehicles that were equipped with Firestone tires brought a *nationwide* class action over abnormally high tire failure rates. The district court certified the nationwide class, which the Court of Appeals, 288 F.3d 1012, reversed. Nevertheless, plaintiffs in other states sought state-only class actions, some of which were certified, and the defendants sought to enjoin such actions based on the Court of Appeals' previous denial of a nationwide class. The Court of Appeals *rejected* defendants' arguments that the previous denial of class certification was preclusive:

> State courts are free to decide for themselves how much effort to invest in creating subclasses (so that each model of tire or SUV receives appropriate consideration); advice designed to ward off what a federal court deems an unproductive investment of judicial time does not create a 'judgment' that *forbids* any state tribunal to make the effort. Indeed, our opinion contemplated that states would certify narrower classes; we gave, as an example, '1995 Explorers in Arizona equipped with a particular tire specification'.

333 F.3d at 766. As such, the Court's previous rejection of a nationwide class does not bar subsequent consideration of this state-only class.

Plaintiff's narrow economic loss claims under West Virginia warranty and unjust enrichment theories are amenable to class certification.[4] Nevertheless, to the extent the Court finds that its previous holding with respect to nationwide class certification of these two particular claims is persuasive here, the Plaintiff has brought a claim under the WVCCPA and would seek certification solely of this claim.[5] As noted, the West Virginia Supreme Court has specifically opined on the damage requirement under this statute and found that a factually analogous case was appropriate for class certification. Since this Court has not considered class certification of a limited refund class under this particular West Virginia law, Defendants' cross-motion to strike should be denied on these grounds alone.

### A. Class Certification is Appropriate Here Because the Case Meets Rule 23's Statutory Requirements

The Plaintiff's proposed class must satisfy the requirements of Rule 23(a) and at least one provision of Rule 23(b). *Bradford v. AGCO Corp.*, 18 F.R.D. 600, 602 (W.D.Mo. 1999). Rule 23(a) has four component requirements: (1) the members of the class are so numerous that joinder is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and

---

4. *See, e.g., Tesauro v. Quigley Corp.*, No. 1011, Control 051340, 2002 WL 372947, at *5-6, 9 (Pa. Ct. Com. Pleas Jan. 25, 2002) (certifying a class of consumers who purchased "Cold-Eeze" under implied warranty and unjust enrichment theories); *Cheminova America Corp. v. Corker*, 779 So.2d 1175, 1180 (Ala. 2000) (certifying breach of implied warranty skin cream action); *Gordon v. Boden*, 586 N.E.2d 461, 465 (Ill. Ct. App. 1 Dist.,1991) (certifying breach of implied warranty claim involving adulterated orange juice); G*asperoni v. Metabolife*, No. 00-71255, 2000 WL 33365948, at *6 (E.D. Mich. Sept. 27, 2000) (certifying breach of warranty class action involving drug products); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 956-57 (E.D. Tex., 2000) (certifying breach of warranty claim involving computers); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998) (certifying telephone charge unjust enrichment class); *Hinshaw v. AT&T Corp.*, No. 29D01 9705 CP 000308, 1998 WL 1799019, at *10-11 (Ind. Super. Aug. 24, 1998) (same).

5. All of the Plaintiff's claims seek economic loss as a result of purchasing Baycol.

adequately protect the interests of the class. Fed.R.Civ.P. 23(a); *See, e.g., Paxton v. Union Nat'l Bank of Little Rock*, 688 F.2d 552, 559 (8th Cir. 1982). The proposed class also satisfies requirements of Rule 23(b)(3): (1) questions of fact and law common to the class predominate over questions affecting only individual members, and (2) a class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3).

In considering class certification, Rule 23 should be liberally construed. *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831, *cert. denied*, 434 U.S. 856 (1977). For purposes of examining a motion on certification, the Court is to accept the substantive allegations of the Plaintiff to be true. *E.g., Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.RD. 569, 573 (D.Minn 1995) (court should not examine merits of plaintiffs' claims when deciding issues of class certification, and predetermination of merits at this stage is inappropriate).

Defendants move to strike the Plaintiff's class allegations on two limited grounds: 1) because individual issues of fact allegedly predominate; and 2) because Mr. McCollins is allegedly an inadequate class representative. Def. Mot. at 9-14. As such, Defendants do not contest the numerosity, commonality and typicality requirements of Rule 23(a). Nor do Defendants dispute that issues of *law* predominate and that a class action is a superior method for addressing Plaintiff's claims. Plaintiff will briefly address these undisputed Rule 23 elements.

#### 1. The Members of the West Virginia Class are So Numerous that Joinder of All Members is Impracticable.

Although "[n]o arbitrary rules regarding the necessary size of classes have been established," *Paxton*, 688 F.2d at 559, the class must be "so numerous that joinder of all

members is impracticable." Fed.R.Civ.P. 23(a)(1). If the court can draw reasonable inferences as to the appropriate size of the class and the infeasibility of joinder, numerosity is satisfied. *See In re Kirschner Medical Corp. Secs. Litig.*, 139 F.R.D.74, 78 (D.Md. 1991) (noting that "as few as 25 to 30 members raises the presumption that joinder would be impracticable"); *Swanson v. American Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (certifying class of as few as 40 members). The West Virginia Class includes thousands of potential litigants within the state. Second Amended Class Action Complaint ("Compl."), at ¶ 35. This Court has previously ruled that a class of thousands meets the numerosity requirement. *In re Baycol*, 218 F.R.D. at 204. Joinder of all these plaintiffs is impracticable. Thus, this West Virginia Class satisfies the numerosity requirement of Rule 23(a)(1).

### 2. There are Questions of Law and Fact Common to the West Virginia Plaintiff and West Virginia Class

Rule 23(a)(2) requires that the claims of the class members involve common questions of law or fact. "It is not necessary that all questions of law and fact are common to the class, rather the commonality requirement is met were, [sic] for example, 'the question of law linking the class members is substantially related to the resolution of the litigation, even though the individuals are not identically situated.'" *In re Baycol*, 218 F.R.D. at 205 (*quoting Paxton*, 688 F.2d at 561.). Rule 23(a)(2) requires only one, not all, questions of fact and law must be common to class members. *See Deboer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). This Court previously accepted common issues of law and fact to include:

- whether Baycol causes injury;

- whether Defendants concealed adverse events from the FDA; and,

- whether Defendants failed to adequately warn of the risks of Baycol.

*In re Baycol*, 218 FR.D. at 205. The issues of law and fact are also common to this limited West Virginia class.

### 3. The Claims of the Representative Plaintiff are Typical of the Claims of the Class

Rule 23(a)(3) requires that the claims of the class representatives be typical of the claims of the class. Typicality involves a showing that there are "other members of the class who have the same or similar grievances as the plaintiff." *Donaldson*, 554 F.2d at 830; *Paxton*, 688 F.2d at 562. The rationale of the typicality requirement is to ensure the class representative "will pursue his or her own self-interest in the litigation, and in so doing, will advance the interests of the class members [.]" A. Conte & H. Newberg, 1 *Newberg on Class Actions* § 3:13 at 325 (4th ed. 2002).

"The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer,* 64 F.3d at 1174. "[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Lockwood*, 162 F.R.D. at 575.

As the West Virginia Supreme Court found in *In re Rezulin*, "'differences in the situation of each plaintiff or each class member do not necessarily defeat typicality: The harm suffered by the named plaintiffs may differ in degree from that suffered by other members of the class so long as the harm suffered is of the same type.'" *In re Rezulin*, 585 S.E.2d at 68 (*quoting Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 65 (S.D.Ohio 1991) (citations omitted)). Furthermore, "'[t]he fact that a defense may be asserted

against the named representatives, as well as some other class members, but not the class as a whole, does not destroy the representatives' status.'" *In re Rezulin*, 585 S.E.2d at 68 (*quoting Shutts*, 679 P.2d at 1172).

Here, the class representative's claims are typical of the class members.

### 4. The Class Representatives Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In analyzing Rule 23(a)(4), courts should consider "(1) [whether] the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562-63. This is the only element of Rule 23(a) that Defendants have raised in their cross-motion.

Plaintiff has retained experienced counsel who are qualified to prosecute this action. Similarly, adequacy of counsel was not challenged in the national class litigation. *In re Baycol*, 218 F.R.D. at 206. Instead, Defendants here argue that named Plaintiff McCollins is not an adequate class representative because his economic loss claims may not be as extensive as other class members. Def. Mot. at 12-14.

Defendants first assert that Plaintiff's Second Amended Class Action Complaint seeks "damages for various economic losses as outgrowth of purported [personal] injuries, including more extensive compensatory and economic damages." Def. Mot. at 13. Defendants' attempts to raise a "straw man" argument about damages Plaintiff and the class are not seeking in order to prevent class certification should be rejected. Plaintiff and the class seek limited out of pocket expenses related solely to their purchase of Baycol and the Second Amended Class Action Complaint cannot be read otherwise.

While Defendants attempt to take snippets of Mr. McCollins' deposition transcript out of context, he is clear about what he is seeking through this suit:

> Q: Do you seek to recover the portion of the purchase price of Baycol that came out of your pocket?
> A: Yes.
> Q: Do you seek to recover anything in this case as far as economic damages?
> A: That's the only economic damage I had.

28: 4-11. This was further clarified during a discussion about the Plaintiff's fact sheet:

> Mr Yianne [Plaintiff's Counsel]: If it has to do with his cost for Baycol, then, yes, we would supplement and indicate that the plaintiff is seeking his out-of-pocket cost for the unused Baycol. But if it is talking about out-of-pocket expenses in terms of having to go to the doctor to ask the doctor, "What is going on, has this caused me any injury?:, then Mr MCCollins is not making a claim for those type of out-of-pocket expenses.
> By Mr Legg: Q: Sir, do you agree with your attorney's characterization of your claim?
> A: Yes

46:20-23; 47: 1-8; *see also* 144:1-9 ("What are you – of any type – what loss are you claiming that you personally experienced as a result of taking Baycol . . . . Well, just the loss of my co-pay and whatever the law allows me to get."). Plaintiff's Second Amended Class Action Complaint is not seeking damages for any members of the Class beyond those sought for Mr. McCollins.[6] *See* Comp. at ¶ 67 ("As a result of the acts of these unfair and deceptive trade practices and, or consumer fraud described above, Plaintiff and the Class have suffered ascertainable loss – *economic loss that includes the purchase price of the product* – for which Defendants are liable to Plaintiff and the Class for their ascertainable losses.") (emphasis added).

---

6. To the extent there is any ambiguity in the Second Amended Class Action Complaint, Plaintiff will seek only to certify refund and out of pocket expenses related solely to the purchase of Baycol when Plaintiff moves for class certification. Regardless, any disputes about recoverable economic loss should not be resolved on Defendants' cross-motion to strike.

Defendants also claim that because Mr. McCollins does not have damages that are as substantial as other class members, he has a conflict of interest in representing the class. This is a logical fallacy. Mr. McCollins has the same interest in establishing Defendants' liability and seeks the same types of remedies through the same theories of law. This shared interest makes Mr. McCollins an adequate class representative despite differences in the amount of damages sought. West Virginia courts, in reviewing claims under the WVCCPA, have found that differences in damages are not impediments to class certification. *In re Rezulin*, 585 S.E.2d at 69.

It is well settled that the presence of individual damages issues will not defeat predominance. *See Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004) ("[N]umerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate."); *In re Ampicillin Antitrust Litig.*, 55 F.R.D. 269, 276 (D.D.C. 1972); *Christiana Mortgage Corp. v. Del. Mortgage Bankers*, 136 F.R.D. 372, 382 (D. Del. 1991) ("Should it be necessary to calculate the amount of damages for each class member on an individual basis, this would not preclude class certification"); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977). As the Eleventh Circuit noted in the *Klay v. Humana* HMO RICO litigation:

> In assessing whether to certify a class, the Court's inquiry is limited to whether or not the proposed methods for computing damages are so insubstantial as to amount to no method at all . . . . Plaintiffs need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis. Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be

> calculated on an individual basis is no impediment to class certification.

382 F.3d at 1259-60 (internal brackets, quotations and footnotes omitted). Further, the court noted that even if the individual plaintiffs' damage claims required "corroboration and individualized consideration, such inquiries are outweighed by the predominating fact that the Defendants allegedly conspired to commit, and proceeded to engage in, a pattern of racketeering activities to further their Managed Care Enterprise." *Id.* at 1260.[7] Because Mr. McCollins shares a common interest with all class members in establishing Defendants' liability, he will fairly and adequately protect the interests of the Class in accordance with Rule 23(a)(4).

Defendants' argument that Mr. McCollins may extinguish personal injury claims of absent class members is unfounded. *See* Def. Mot. at 14, n.5. Claim preclusion bars absent class members' subsequent claims for personal injury only if such claims "*were* or *could have been* raised" in the present action. *Rivet v. Regions Bank*, 522 U.S. 470, 476 (1998) (emphasis added). This Court has already ruled that personal injury claims are inappropriate for class certification and, as such, claim preclusion would not apply. *See, e.g., Barnes v. American Tobacco Co., Inc.*, 176 F.R.D. 479 (E.D. Pa. 1997) (holding that the failure to bring claims not suitable for class-wide adjudication is not improper claim-splitting).[8]

---

7. *See also In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 384 (S.D.N.Y.1996) ("We need not consider [defendant's expert affidavit] in detail, as it is for the jury to evaluate this conflicting evidence and to determine what weight to give the expert's conclusions.") (citations omitted); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 522 (S.D.N.Y. 1996) ("The Court need not decide at [the class certification] juncture what [economic methodologies are] best suited to the particularities of this case. It is sufficient to note at this stage that there are methodologies and that Rules 23(c)(1) and (d) allow ample flexibility to deal with these issues.").

8. As for those individuals who have not yet manifested a personal injury but who may in the future, like in the asbestos cases, the bringing of a claim for a later emerging disease is not barred by claim preclusion. *See, e.g., Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111, 117 n.33 (D.C. Cir. 1982)

Further, "[s]ince claim preclusion is grounded upon considerations of fairness and efficient judicial administration, the doctrine is not applied rigidly where such interests would not be served." *Gloucester Marine Railways Corp. v. Charles Parisi, Inc.*, 36 Mass. App. Ct. 386, 391 (1994); *see also United States v. Am. Heart Res. Found.*, 996 F. 2d 7, 11 (1st Cir. 1993) (holding that *res judicata* is a judge-made doctrine not to be applied where practical concerns favor separate actions). Considerations of fairness and efficient judicial administration overwhelmingly favor certification for the purpose of adjudicating the claims for class-wide relief asserted in this action. As one court has observed:

> What defendants have characterized as "splitting" causes of action is perfectly appropriate under Rule 23. It is not uncommon for defendants to engage in a course of conduct which gives rise to a variety of claims, some amenable to class treatment, others not. Those claims that are amenable should be prosecuted as class actions in order to realize the savings or resources of courts and parties that Rule 23 is designed to facilitate. . . . Class representatives must press all claims which can be prosecuted on a class basis, but they need not and should not press for certification of claims that are unsuitable for class treatment.

*Sullivan v. Chase Inv. Servs. of Boston, Inc.*, 79 F.R.D. 246, 265 (N.D. Cal. 1978) (citation omitted). Indeed, such claim splitting arguments have been rejected repeatedly by other courts where consumer fraud claims were brought for products that might have also caused personal injuries.[9]

---

(allowing a plaintiff to file a second suit for asbestos-related cancer after filing an asbestosis suit because the cancer is a distinct injury); *Gasperoni*, 2000 WL 33365948, at *4 (granting class certification to plaintiffs alleging fraudulent misrepresentation and breach of warranty: "[T]he only legal issue to be certified is simply whether the label is materially misleading. Any personal injuries that develop in class members after the present suit, will not be subject to res judicata because their claim will not have been *actually litigated*, nor will it be one that might have been raised in the previous suit.") (emphasis added).

9. *See, e.g., Howard v. Brown & Williamson Tobacco Corp.*, No. 00-L-136, 2001 WL 1910779, at *1 (Ill. Cir. Ct. Dec. 18, 2001) ("This Court believes there is no impermissible splitting of claims here since this consumer fraud action seeking the return of the purchase price of light cigarettes presents legal claims

Moreover, only a small number of class members might have a present claim for personal injury as most of the personal injury cases in the MDL have been resolved. These individuals, if they prefer, have the option to exclude themselves from the class by opting out under Rule 23(c)(2). *See, e.g.*, *Uniondale Beer Co. v. Anheuser-Busch, Inc.*, 117 F.R.D. 340, 343 (E.D.N.Y. 1987) (holding that "any class member holding a different position on the benefits of the lawsuit or believing that its interests conflict with those of the named representatives may 'opt-out' pursuant to the provisions of Rule 23(c)(2)"); *Marrone*, 2004 WL 2050485, at *5 ("Any members of the class who wish to individually pursue personal injury actions may preserve those rights by opting out of the class."); *Gunnels v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003) ("Rule 23(c)(2) permits members of a class maintained under section (b)(3) to opt out of the class, providing an option for those Plaintiffs who wish to pursue claims against [the defendant] requiring more individualized inquiry."); *Hudson v. Capital Mgmt. Int'l, Inc.*, 565 F. Supp. 615, 631 (N.D. Cal. 1983) ("Whatever the resolution of those claims, if any potential conflict exists, it may be eliminated by class members' use of the opt-out mechanism provided under Rule 23(c)(2)."). Likewise, this Court can simply expressly

---

separate and distinct from any personal injury claims relating to smoking that the class members may have now or in the future against the Defendant. Any and all such claims for personal injury by class members are not and could not be included in this case and are hereby specifically preserved."); *Miles v. Philip Morris Cos.*, No. 00-L-0112, 2001 WL 34366710, at *2 (Ill. Cir. Ct. Feb. 1, 2001) ("As to defendants' challenge of the adequacy of the named plaintiffs on the basis that the plaintiffs are impermissibly splitting the claims of the unnamed class members by seeking to recover only the purchase price of the light cigarettes, this Court believes that there is no impermissible splitting of claims in this action."); *Marrone v. Philip Morris USA, Inc.*, No. 03CA0120-M, 2004 WL 2050485, at *6 (Ohio Ct. App. Sept. 15, 2004) ("Any individual personal injury claims of absent class members would not be precluded because those claims cannot be litigated in this action."); *Aspinall v. Philip Morris Cos.*, 813 N.E.2d, 476, 489 n.19 (Mass. 2004) (holding that claim preclusion did not apply because the class members would not have the opportunity to raise personal injury claims during a class action which was certified to proceed only on an economic theory of damages).

reserve class members' rights to bring claims for personal injuries in later litigation in entering final judgment.[10]

Thus, Defendants have failed to establish that Plaintiff's class allegations should be stricken.

**5. The West Virginia Class Fulfills the Requirements of Rule 23(b)(3)**

In addition to the requirements of Rule 23(a), the proposed class must satisfy one provision of Rule 23(b). Plaintiff seeks certification under Rule 23(b)(3), which requires that (1) common issues predominate over individual issues and (2) class treatment is superior to other methods of adjudication. Fed.R.Civ.P. 23(b)(3). For common issues to predominate, Plaintiff need only show that generalized evidence exists such that the predominant issues in a case may be resolved on a class-wide basis. *In re Commercial Tissue Prods.*, 183 F.R.D. 589, 596 (N.D.Fla. 1998) ("the court is only to consider whether the type of proof offered by plaintiffs to attempt to prove injury to the class members will be of a class-wide character such that class action treatment of the case will be superior to myriad individual actions"). "The guiding principle for (b)(3) certification is that the interests of the parties can best be served by settling their differences in a single action." *Id.* at 595 (internal citation omitted). It is sufficient if the predominant

10. *See, e.g.*, Wright, Miller & Cooper. Federal Practice & Procedure § 4413 at 105 (1981) ("A judgment that expressly leaves open the opportunity to bring a second action on specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion."); *see also Washington Public Power Supply System v. Pittsburgh-Des Moines Corp.*, 876 F.2d 690, 699 (9th Cir. 1989). As stated in the Restatement (Second) of Judgments § 26(1)(b):

> When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against a defendant:
>
> . . .
>
> (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; . . .

issues can be resolved on a class-wide basis, even if some individual issues remain. *See In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D.Minn. 1995).

In determining whether common questions of fact predominate, the Court must determine whether "common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *In re Agent Orange Product Liability Litig.*, 100 F.R.D. at 718, 722 (E.D.N.Y. 1983). The most "pragmatic" way for the Court to make this determination is to assess whether common proof of Plaintiff's claims will predominate at trial. *See, e.g.*, *In re NASDAQ*, 169 F.R.D. at 517 ("Plaintiffs' burden on this motion for class certification is to establish that common proof will predominate at trial. . . ."); *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) (the "significant part" requirement is met if "jury findings on the class questions [will] significantly advance the resolution of the underlying . . . cases").

Even if individual issues are present, class certification is warranted since all issues common to the Class arise under West Virginia law. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982) ("[C]lass relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class") (internal quotation omitted); *Westfall v. Kendle Int'l*, No. 1:05-cv-001118, 2007 U.S. Dist. LEXIS 11304 at *34 (N.D.W.Va. Feb 15, 2007) (applying West Virginia law). Also, even if Class members may have to "individually demonstrate their right to recover, or that they may suffer varying degrees of injury, [class action is not] precluded by the presence of individual defenses against class plaintiffs." *In re Rezulin*, 585 S.E.2d at 67 (*quoting* 1 *Newberg on Class Actions*, § 3:12 at 314-15 (4th ed. 2002). The existence of "some factual

differences in the claims of the potential class members, such as the varying amounts of damages and degrees of reliance on [Defendants'] misrepresentations . . . *are irrelevant . . . since there are common questions of law in this case*." *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 640 (D.Colo. 1986) (emphasis added). *See also In re Rezulin*, 585 S.E.2d at 67.

Common issues of fact and law relative to the design, manufacture, and marketing of Baycol predominate over any individual issues relating to Class members. Therefore, certification under Rule 23(b)(3) is appropriate. Nevertheless, Defendants maintain that individual issues predominate here because Baycol may have "worked" for Mr. McCollins by lowering his cholesterol and because his cramps may be unrelated to his Baycol use. Def. Mot. at 11-12. These issues, even if true, do not support striking Plaintiff's class allegations. Under the West Virginia Supreme Court's binding interpretation of the WVCCPA, ascertainable loss does not require a plaintiff to prove that a product did not "work" or that it caused a personal injury:

> We conclude that for a consumer to make out a *prima facie* case to recover damages for 'any ascertainable loss' under W.Va.Code 46A-6-106 [WVCCPA], the consumer is not required to allege a specific amount of actual damages. If the consumer proves that he or she has purchased an item that is different from or inferior to that for which he bargained, the 'ascertainable loss' requirement is satisfied.

*In re Rezulin*, 585 S.E.2d at 75. Likewise, the Court concluded that trial court had erred in holding that individual damages predominated over the alleged misconduct of defendants. *Id.*

Here, Plaintiff has alleged that Defendants "made untrue, deceptive or misleading representations of material facts to, and omitted and/or concealed material facts from,

Plaintiffs and members of the Class . . . The misrepresentations and omissions described herein were likely to deceive consumers into purchasing and ingesting Baycol." Comp. at ¶¶ 57-58. Mr. McCollins testified that Baycol was "a bad product" that "hurt a lot of people." 16: 20-21; *see also id.* at 149: 17 (describing Baycol as a "bad drug."). Further, Mr. McCollins alleges that if the drug had been safe, Defendants would not have pulled it off of the market. 27:20-22. These allegations are sufficient to establish a claim under the WVCCPA and further support the fact that common issues predominate over any issues related to loss as Plaintiff's claims can be objectively decided on a classwide basis.

Rule 23(b)(3) also requires that a class action must be superior to other methods "for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In evaluating superiority, the "focus is not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269. Plaintiff is not aware of any other procedure that would allow the Court to deal with these small, economic loss claims as efficiently, consistently, and fairly as a class action. The only other alternative approach would be nearly identical individual lawsuits for losses that are generally under $1,000 and, in many cases, are less than $100; this is patently inferior to a class action to deal with Defendants' fraudulent and deceptive conduct. *See, e.g., Tedesco v. Mishkin*, 689 F. Supp. 1327, 1336-37 (S.D.N.Y. 1988). Additionally, the resolution of these claims in one forum will be highly efficient. *In re Agent Orange*, 100 F.R.D. at 720 (*quoting Williams, Mass Tort Class Actions*, 98 F.R.D. 323, 324 (1983) ("A number of courts have seen the class action as the only alternative 'to trying . . . virtually identical lawsuits, one-by-one,' resulting in the 'bankruptcy of both the state and

federal court systems.'").[11] Plainly the class procedure is superior to any alternative procedure for dealing with these issues.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

Defendants assert that Mr. McCollins has no "cognizable evidence" that he suffered an economic injury caused by defendants. Def. Mot. at 14. In particular, Defendants contend that the record contains no evidence that Mr. McCollins sustained a personal injury from his Baycol use; he did not rely on any misrepresentations; and that Baycol was less expensive. *Id.* at 15. Even if true, however, none of these allegations would conclusively establish judgment for Defendants.

Defendants cite cases from around the country but ignore the one controlling case on point which interpreted West Virginia's Consumer Credit and Protection Act: *In re Rezulin*. As discussed above, to proceed under that Act, neither Plaintiff nor the Class needs to establish a personal injury, reliance, or that alternatives were less expensive. Under the WVCCPA, the West Virginia Supreme Court has made clear that a plaintiff suffers a loss if "he or she has purchased an item that is different from or inferior to that for which he bargained . . . ." *In re Rezulin*, 585 S.E.2d at 57. Clearly, there are disputed facts about whether or not Baycol was "different from" or "inferior to" the product for which Mr. McCollins bargained. As such, summary judgment is inappropriate.

---

11. *See also Klay*, 382 F.2d at 1270 ("Holding separate trials for claims that could be tried together 'would be costly, inefficient, and would burden the court system' by forcing individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts.") (citation omitted); *In re School Asbestos Litig.*, 789 F.2d 996, 1008 (3d Cir. 1986), *cert. denied,* 479 U.S. 852 (class treatment is superior "over the situation which the same separate suits require adjudication on liability using the same evidence over and over again"); *In re Cordis Corp. Pacemaker Prod. Liab. Litig.*, No. MDL 850 C-3-86-543, 1992 WL 754061, at *15 (S.D. Ohio 1992) ("The repetitive proof of these historic facts would waste an inordinate amount of scarce judicial resources"); *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 67 (S.D. Ohio 1991) ("It would neither be efficient nor fair to anyone, including defendants, to force multiple trials to hear the same evidence and decide the same issues").

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion to remand to the transferor court should be granted and Defendants' cross-motions to strike class allegations and for summary judgment should be denied.

**George F. McCollins, individually, and on behalf of all others similarly situated,**
**By Counsel**

s/ Tim J. Yianne
Harry F. Bell, Jr.
Tim J. Yianne
30 Capitol Street
P.O. Box 1723
Charleston, WV 25326-1723
(304) 345-1700
(304) 345-1715 Facsimile

Richard S. Lewis
James J. Pizzirusso
Cohen, Milstein, Hausfeld & Toll PLLC
1100 New York Ave. NW
West Tower, Suite 500
Washington, D.C. 20005
(202) 408-4600
(202) 408-4699 Facsimile

Counsel for Plaintiff George F. McCollins

**CERTIFICATE OF SERVICE**

I, Tim J. Yianne, certify that a true and correct copy of the foregoing REPLY IN SUPPORT OF MOTION TO REMAND AND OPPOSITION TO BAYER AND GSK'S CROSS-MOTION TO DENY CLASS CERTIFICATION AND ENTER JUDGMENT AGAINST PLAINTIFF was electronically served to all counsel of record on this 11th day of June, 2007.

s/ Tim J. Yianne
Bell & Bands, PLLC