**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

In Re: BAYCOL PRODUCTS LITIGATION

This Document Relates to:

GEORGE F. MCCOLLINS, individually,
and on behalf of all others similarly situated,

Plaintiff,

v.

**MEMORANDUM OF LAW & ORDER**
MDL No. 1431
Case No. 02-0199 (MJD/SRN)

BAYER CORPORATION,
a foreign corporation authorized to do business in West Virginia;
BAYER AG, a foreign corporation; and
GLAXOSMITHKLINE plc, a foreign corporation,

Defendants.

---

Tim J. Yianne, Harry F. Bell, Jr., Bell & Bands, PLLC counsel for the George McCollins, Plaintiff.

Philip S. Beck, Adam Hoeflich, Bartlit Beck Herman Palenchar & Scott, LLP; Scott A. Smith, Tracy J. Van Steenburgh, Halleland, Lewis, Nilan, Sipkins & Johnson, P.A.; Susan A. Weber, James W. Mizgala, James R.M. Hemmings, Sidley Austin, LLP; Frank R. Volpe, Eamon P. Joyce, Sidley Austin, LLP; Richard K. Dandrea, Eckert Seamens, Cherin & Mellott, LLC; Peter W. Sipkins, Dorsey & Whitney, LLP; Douglas R. Marvin, Williams & Connolly counsel for Bayer Corporation, Defendant.

Fred T. Magaziner, Dechert, LLP, Counsel for SmithKline Beecham Corp. d/b/a GlaxoSmithKline, Defendant.

---

## I. INTRODUCTION

This matter is before the Court on Plaintiff George McCollin's Motion to Remand to the Southern District of West Virginia [Docket No. 48]. Also before the Court is Defendant Bayer and GlaxoSmithKline ("GSK")'s Cross-Motion to Deny Class Certification and Enter Judgment Against the Plaintiff [Docket No. 49].

## II. FACTUAL BACKGROUND

This action involves the prescription drug, cerivastatin, which was marketed in the United States under the brand name Baycol. Cerivastatin is a member of a class of drugs known as statins that have been routinely prescribed to lower the lipid levels of individuals with high cholesterol.

Baycol was approved by the FDA in June 1997, but in August 2001, it was withdrawn from the market after thirty-one deaths in the United States were linked to Baycol use. Thereafter, thousands of lawsuits commenced throughout the country in state and federal court, asserting, *inter alia,* claims of strict liability, negligence, breach of warranty and medical monitoring. Given the number of cases filed in federal court, the Judicial Panel on Multidistrict Litigation (JPML) consolidated the cases in this Court by Order dated December 18, 2001 pursuant

to 28 U.S.C. § 1407 [Docket No. 1].

Plaintiff George McCollins, a West Virginia resident, brings this suit on behalf of himself and on behalf of a putative class of plaintiffs who "purchased Baycol as a cholesterol lowering product in West Virginia." (Compl. ¶ 1). Plaintiff's Motion to Remand seeks to have this case transferred to the transferor court, the Southern District of West Virginia. (Pl.'s Mot. for Remand 1).

Plaintiff seeks damages under West Virginia law for himself and the putative class in the nature of a refund for economic loss allegedly caused by Defendants' breach of express and implied warranties and violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA") (Pl.'s Mot. for Remand 1). Plaintiff proposes the class consist of "individuals who have at any time purchased Baycol in West Virginia from when Baycol was initially placed on the market in the United States until the present." (Pl.'s Mot. for Remand 2, ¶ 1). Defendants oppose remand and ask this Court to retain jurisdiction through summary judgment. Moreover, Defendants request prompt consideration by this Court of Plaintiff's class action allegations through Defendants' Cross-Motion to Deny Class Certification and Enter Judgment Against Plaintiff.

## III. DISCUSSION

### A. Plaintiff's Motion to Remand

28 U.S.C. § 1407 provides, as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation . . . and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated . . . .

28 U.S.C. § 1407(a).

As a result, remand at the conclusion of the pretrial proceedings is mandatory, whereas remand prior to the conclusion of pretrial proceedings is discretionary with the transferee court. See In re Bridgestone/Firestone, Inc., 128 F. Supp.2d 1196, 1197 (S.D. Ind. 2001)(citation omitted).

The power to remand a case to the transferor court lies solely with the JPML. See 28 U.S.C. § 1407(a). The role of the transferee court in reviewing a motion for remand is to provide a suggestion or recommendation to the Panel. The suggestion of the transferee court carries great weight. See In re Evergreen Valley Project Litig., 435 F.Supp. 923, 924 (J.P.M.L.1977)(citation omitted).

In determining whether to issue a suggestion of remand to the JPML, the court should be guided by standards for remand employed by the Panel. In re Bridgestone/Firestone Inc., 128 F. Supp.2d at 1197. Generally, the decision to remand turns on the question of "whether the case will benefit from further coordinated proceedings as part of the MDL." Id.; see, e.g., In re Air Crash Disaster, 461 F.Supp. 671, 672-73 (J.P.M.L. 1978). Remand is appropriate when the discrete function performed by the transferee court has been completed. See In re Richardson-Merrel, Inc., "Bendectin" Prods. Liab. Litig. (No. II), 606 F.Supp. 715, 716 (J.P.M.L.1985).

Section 1407 contemplates that the transferee judge in his discretion "will conduct the common pretrial proceedings with respect to the actions and any additional pretrial proceedings as he deems otherwise appropriate." In re Evergreen Valley Project Litig., 435 F.Supp. at 924.

Moreover, under Pretrial Order No. ("PTO") 161, Section (4)(b), a case shall be ready for remand when: (1) Plaintiff's Fact Sheet is substantially complete and all identified deficiencies have been corrected; (2) Plaintiff has executed all appropriate authorizations, including HIPPA-compliant authorizations, as requested by defendants; (3) Case-specific fact and expert discovery has been

completed; (4) The Court has ruled upon any pending motions affecting the case; and (5) Mediation has been conducted pursuant to Section 4.a., and PTO 59. (See PTO 161 § (4)(b)).

The accrual of judicial expertise is central to the multi-district litigation process. Moreover, "[i]t is a fundamental assumption of the multidistrict system that having only one court sort out the facts of complex and multi-faceted transactions and occurrences which have given rise to many competing legal claims well serves the goal of judicial economy." In re Integrated Resources Inc., MDL No. 897, Misc. No. 21-61(RWS), No. 92 Civ. 4555(RWS), 1995 WL 234975, at *4 (S.D.N.Y. Apr. 21, 1995)(referencing In re Holiday Magic Securities and Antitrust Litig., 433 F.Supp. 1125, 1126 (J.P.M.L.1977)).

It is Defendants' position the Court should not remand a case that could be decided through "simple motion practice." Defendants also point out that this Court already knows the issues in this litigation and can therefore address summary judgment motions "expeditiously."

In response, Plaintiff argues there is no danger that the transferor court would duplicate efforts in order to learn the issues and theories of the case. This argument carries little weight. Any court that receives this matter will need to

invest significant time learning the issues to decide the pending summary judgment motion and class certification should class certification not be decided by this Court.

Based upon the long-term duration of the Baycol MDL and the extensive background, expertise, and knowledge acquired by this Court over the course of this litigation, in conjunction with the fact that this Plaintiff will still benefit from participation in the MDL, Plaintiff's motion to remand is denied. This Court will promptly consider Defendants' Cross-Motion to Deny Class Certification and Enter Summary Judgment Against Plaintiff.

**B. Defendants' Cross-Motion to Deny Class Certification**

**1. Rule 23(a) Class Certification Threshold Requirements**

Plaintiff seeks to certify a class of "individuals who have at any time purchased Baycol in West Virginia from when Baycol was placed on the market in the United States until the present." (Pl.'s Mot. For Remand 2). The class seeks recovery under the following theories: economic loss based on breach of express and implied warranties in violation of the WVCCPA. See W. Va. Code § 46A-6-106.

Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure there are

four threshold requirements to class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The Court in this case, assumes, without deciding, that the requirements of Rule 23(a) are satisfied. Nevertheless, it is clear that this case is inappropriate for certification based on Rule 23(b)(3).

**2. Rule 23(b)(3)**

In general, "plaintiffs seeking class certification bear the burden of demonstrating that the class and any subclass meet the four requirements of Rule 23(a) as well as one of the criteria of Rule 23(b)." In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61, 66 (S.D.N.Y. 2002). The court may certify a class if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

In deciding whether the predominance and superiority requirements are

met, district courts must consider the following factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the difficulties likely to be encountered in the management of a class action.

Id.

This Court has previously addressed attempts to certify a refund class under Fed. R. Civ. P. 23(b)(3) and (c)(4). See In re Baycol Prod. Litig., 218 F.R.D. 197, 213 (D. Minn. 2003) (Plaintiffs' motion to certify a refund class seeking restitution, disgorgement of profits and punitive damages based on claims of unjust enrichment and breach of implied warranty of merchantability and breach of warranty against redhibitory defects denied as plaintiffs failed to demonstrate that common issues of law predominate).

**a. Predominance**

Plaintiff argues that this case is appropriate for class treatment contrary to this Court's prior ruling denying certification of a nationwide personal injury, medical monitoring, punitive damages, and refund class because any

individualized issues of fact and law that led the Court to previously deny certification are no longer present. See In re Baycol Prods. Liab. Litig., 218 F.R.D. at 213. Plaintiff relies on the fact that he proposes a West Virginia only class, which eliminates the issues associated with applying the laws of numerous state jurisdictions.

Defendants argue this Court has already ruled that economic loss claims cannot be litigated on a classwide basis because individual issues of fact predominate. Moreover, Defendants point out that the viability of Plaintiff's claims depends on whether patients received his or her money's worth from Baycol and to prevail plaintiffs would have to demonstrate that they were either injured by Baycol, or that Baycol did not provide them any health benefits.

Focusing on the predominance issue, the Court is unpersuaded that the individualized issues of fact and law that led the Court to previously deny class certification are no longer present in this matter.

In prior Baycol proceedings this Court rejected the argument that to prove an unjust enrichment claim, plaintiffs need only show that plaintiffs paid the defendants, defendants accepted the payment and that it would be unjust for defendants not to return the payment. In re Baycol Prod. Litig., 218 F.R.D. at 213.

The Court noted plaintiffs' argument was contrary to direct testimony from the Plaintiffs' Steering Committee ("PSC") expert, Dr. Kaysen, who testified that "one would have to know whether or not they suffered any injury to be able to tell [whether plaintiffs received their money's worth from Baycol]." Id.

This Court further found that "contrary to plaintiffs' argument, to succeed on either the unjust enrichment or breach of warranty claims, plaintiffs would have to demonstrate that they were either injured by Baycol, or that Baycol did not provide them any health benefits." Id. (referencing In re Rezulin, 210 F.R.D. at 61; accord Clay v. Am. Tobacco Co., 188 F.R.D. 483, 501 (S.D.Ill. 1999) (individual inquiry bears directly on liability for unjust enrichment)). Moreover, this Court found that "individual issues predominate, rendering class certification unwarranted." Id. at 214.

To recover under West Virginia law on any of Plaintiff's economic loss claims, including breach of express and implied warranty, unjust enrichment, and violations of the WVCCPA, Plaintiff must show an actual injury proximately caused by Defendants. See W. Va. Code § 46A-6-106 (requiring ascertainable loss of money or property resulting from prohibited or unlawful practice); Jones v. Purdue Pharma L.P., No. Civ. A. 5:01-1246, 2002 WL 32097528, *2 (S.D. W. Va.

Feb. 27, 2002) (finding causation is required for breach of warranty claims and alleged violations of the WVCCPA) (citing W. Va. Code § 46-2-714); Bertovich v. Advanced Brands & Importing, Co., No. 5:05CV74, 2006 WL 2382273, at *4-5 (N.D. W. Va. Aug. 17, 2006) (recognizing consumer protection act, unjust enrichment, negligence and other West Virginia claims required proof of "an actual injury to a legally protected interest").

The evidence supports the conclusion that individual issues of fact predominate with respect to whether Baycol benefitted or harmed any particular person. For example, to determine whether Baycol worked for any individual, it is necessary to consider that particular plaintiff's medical history. An in depth review of each plaintiff's medical records would require an examination of the individual's pre-existing conditions, prior statin reactions, the plaintiff's knowledge of the potential side effects associated with statins, and the warnings provided.

Individual evidence would be necessary as to each member of the putative class to determine whether the individual person benefitted from or was injured by Baycol. Therefore, as this Court determined previously, individual issues of fact predominate.

### b. Superiority: Negative Value Lawsuit

The next requirement under Rule 23(b)(3) is that the class action be the 'superior' method of adjudicating this dispute. This Court has recognized that "[t]he most compelling rationale for finding superiority in a class action is whether the action is a negative value suit." In re Baycol, 218 F.R.D. at 210 (citing Castano v. Am. Tobacco Co., 84 F.3d 734, 748 (5th Cir. 1996)).

Plaintiff argues that each class member's individual stake is too low to justify the costs of individual litigation resulting in "a negative value" suit. Specifically, litigating an individual Baycol refund claim against Defendants to recover economic damages from purchasing Baycol would dwarf the amount of any individual claim. Plaintiff asserts that when the stakes of each class member are too low to repay the cost of the suit, class certification may be more compelling.

The Court recognizes that a class action appears to be the economically superior method for efficiently litigating the claims of the parties. Regardless, the evidence demonstrates that class certification is not appropriate because individual issues of fact predominate. Therefore, even if Plaintiff had met all requirements of Rule 23(a), Plaintiff's claims are not appropriate for class

certification based on Rule 23(b)(3). As a result, Defendants' Cross-Motion To Deny Class Certification is granted. The Court will now address Defendants' Motion for Summary Judgment.

**C. Defendants' Motion for Summary Judgment**

**1. Rule 56(b): Motion for Summary Judgment**

Under Rule 56(b) of the Federal Rules of Civil Procedure, "a party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b)(2008). Furthermore, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Id. at 323. If the opposing party fails to make a showing that supports the existence of an element essential to the case on which they have the burden of proof at trial, summary judgment must be granted. Id. at 332-33.

A party facing summary judgment has an affirmative duty to put forth evidence to demonstrate a genuine issue for trial. Specifically,

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

Defendants move for summary judgment and allege there is no evidence Plaintiff sustained an economic injury caused by Defendants as required under West Virginia law.

Specifically, Defendants argue West Virginia law requires proof that Defendants caused Plaintiff to suffer an actual financial injury caused by an alleged defect in the product or by Defendants' alleged misrepresentations. See Bertovich, No. 5:05CV74, 2006 WL 2382273, at *4-5 (stating, "under West Virginia law each cause of action [unjust enrichment, negligence, a violation of the WVCCPA] requires cognizable injury and a causal connection between that injury and Defendants' conduct") (citation omitted). See also Briehl v. Gen. Motors Corp., 172 F.3d 623, 627 (8th Cir. 1999) (citations omitted) (noting

"liability does not exist in a vacuum; there must be a showing of some damage . . . . It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own.").

Plaintiff responds to Defendants' Motion for Summary Judgment in two paragraphs. First, Plaintiff does not dispute Defendants' assertions that Plaintiff has no "cognizable evidence" that he suffered an economic injury caused by Defendants. Moreover, Plaintiff does not deny Defendants' allegations that he sustained no personal injury from his Baycol use, or that he did not rely on any misrepresentations. Rather, Plaintiff argues that even if these are true, none of these allegations would conclusively establish judgment for Defendants.

Plaintiff relies on In re West Virginia Rezulin, wherein plaintiffs brought claims for refunds under the WVCCPA and the court found the plaintiffs' refund claims were appropriate for class certification. 585 S.E.2d 52 (W. Va. 2003). Plaintiff alleges that to proceed under this Act, neither Plaintiff nor the class needs to establish personal injury or reliance. Rather, to establish a loss under the WVCCPA, Plaintiff alleges he need only show "he or she has purchased an item that is different from or inferior to that for which he bargained." See In re

Rezulin, 585 S.E.2d at 57.

As a result, Plaintiff alleges there are disputed facts about whether or not Baycol was "different from" or "inferior to" the product for which Mr. McCollins bargained, and therefore summary judgment is inappropriate.

Under the WVCCPA:

> Any person who purchases . . . goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article may bring an action . . . to recover actual damages or two hundred dollars, whichever is greater.

W. Va. Code § 46A-6-106(1).

"[F]or a consumer to make out a prima facie case to recover damages for 'any ascertainable loss' under W. Va. Code 46A-6-106, the consumer is not required to allege a specific amount of actual damages. If the consumer proves he or she purchased an item different from or inferior to that for which she bargained, the 'ascertainable loss' requirement is satisfied." In re Rezulin Litig., 585 S.E. 2d at 75. The meaning of "ascertainable loss" has been defined as follows:

> [T]he inclusion of the word "ascertainable" to modify the

> word "loss" indicates that the plaintiffs are not required to prove actual damages of a specific dollar amount. "Ascertainable" means "capable of being discovered, observed or established." "Loss" has been held synonymous with deprivation, detriment and injury. It is a generic and relative term. . . .Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known. . . . When a product fails to measure up, the consumer has been injured, he has suffered a loss.

Id. at 74-75. Therefore, to succeed under the WVCCPA, Plaintiff must demonstrate Baycol was "something other than what he bargained for."

Mr. McCollins was diagnosed with high cholesterol in December 1992. (Skeens Dep. (Def.'s Ex. A) at 12:13-21, 13:11-14:17). During the time Mr. McCollins took Baycol, his cholesterol, HDL and LDL levels remained within normal range. (Id. at 76:10-79:20). Most telling, Dr. Skeens testified, to a reasonable degree of medical certainty, that Baycol not only was "safe and effective in Mr. McCollins," but "was perfect for [him]." (Id. at 86:8-13, 77:18).

Mr. McCollins does not dispute that Baycol worked for him. (See McCollins Dep., (Def.'s Ex. C) at 111:11-113:6) (testifying he had "no idea" as a layperson whether Baycol worked for him, and deferring to the medical records regarding his cholesterol); (id. at 158:16-159:1) (deferring to a physician on

whether Baycol was a "good drug").

Baycol was routinely prescribed to lower the lipid levels of individuals with high cholesterol. As noted above, Plaintiff purchased Baycol with knowledge of its risks. Defendants have demonstrated, and Plaintiff does not refute, that Baycol was safe and effective for him. His use of Baycol was not associated with any side effects. It was exactly what he bargained for–a cholesterol medication that would lower his cholesterol. There is nothing about Mr. McCollin's use of Baycol that would lead to a deprivation, detriment or injury that is capable of being discovered. Baycol did not "fail to measure up" in Mr. McCollin's case. In fact, it served its exact purpose. Mr. McCollins got what he bargained for. As a result, Mr. McCollins has suffered no ascertainable loss.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion to Remand [Docket No. 48], is **DENIED**;

2. Bayer and GSK's Cross-Motion to Deny Class Certification and Enter Judgment Against the Plaintiff [Docket No. 49], is **GRANTED**. This matter is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 24, 2008

s/Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court